BEFORE THE FIRST DIVISION, APRIL 17, 1961

No. 65455.—C. J. Tower & Sons of Buffalo, Inc. *v.* United States, protest 60/20421 (Buffalo).

WILSON, Judge: Certain merchandise invoiced as "Diversol Chlorinated Trisodium Phosphate" was classified as a chemical compound, not specially provided for, under paragraph 5 of the Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108, and

assessed with duty at the rate of 10½ per centum ad valorem. The importer herein claims that the merchandise is properly classifiable under paragraph 13 of the tariff act, as modified by T.D. 54108, *supra*, under a provision for "Blackings, powders, liquids, and creams for cleaning or polishing, not specially provided for, and not containing alcohol," with duty assessment at the rate of 6 per centum ad valorem. Specifically stated, the plaintiff claims the material in question is a cleaning powder, or a powder for cleaning, under the provisions of paragraph 13.

There is no dispute about the facts. The powder in question is composed of three chemicals, namely, sodium hydroxide, commonly called caustic soda, phosphoric acid, and chlorine. In the manufacture of the powder, disodium phosphate and trisodium phosphate are mixed to produce a liquor; then, more caustic soda or sodium hydroxide is treated with gaseous chlorine to form a liquid known as sodium hypochlorite. The two liquors are then combined, producing a chemical reaction which results in crystallization. After passing through a drying process, the crystals become a powder, which is the finished product, except that, at the time the two liquors above referred to are blended, a slight amount of coloring dye or potassium permanganate is added, which gives the finished product the pinkish color observed in plaintiff's illustrative exhibit 1. The evidence shows that the product contains no alcohol at all (R. 7).

According to the testimony of James Hansuld, plant manager of the exporting company, the merchandise in question is a cleaner, consisting of chlorinated trisodium phosphate known by the trade name "Diversol." He stated that it is produced and marketed as "a cleaning powder, cleaning compound, for use by industry" (R. 8). Mr. Hansuld further testified that he had seen this powder used "in a poultry packing plant, to clean the chickens prior to dressing, and then, afterwards, to clean up the equipment that is used during the dressing procedure. In these plants they have large vats of boiling water, into which the chickens are submerged to loosen the feathers, and we used a solution of Diversol, rather than plain water, so that we could clean the birds, the skin of the birds, at the same time as the feathers were removed. This saved an extra step in the process. Then, after that, the birds passed down the line for dressing. The various utensils, the tables, and equipment that were used, were washed in another Diversol solution, for cleaning" (R. 8–9). The witness also stated that he had observed the powder used for cleaning dairy equipment on cattle farms and that he had seen the material used in a small cafeteria operated by his company to "de-stain the coffee cups each day after use. In plastic dishware, it became quite dirty with coffee stains after use, and this is one of the only products that we could find that did a good job of de-staining those cups" (R. 9–10).

Mr. Hansuld, who holds a bachelor's degree in chemical engineering from Queens University, Kingston, Ontario, Canada, and a master's degree in the same subject from the University of Toronto, and who had been employed by the Diversey Corp. of Canada, the exporter, for nearly 10 years, testified:

Q. Now, Mr. Hansuld, will you tell us, what is there about this product which does the cleaning job, and just how is it done?—A. Well, the product is chemically called a phosphate, which is reputed to be, in chemical sources, a reasonably good cleaner. Many companies purchase trisodium phosphate for cleaning purposes. In our case, we have incorporated chlorine into the product, which is a better cleaner of some contamination, and therefore have added to its cleaning properties.

Q. Does chlorine do anything in addition to cleaning?—A. Yes, sir. Chlorine is what is called an oxidizing agent. It serves to disinfect, to kill bacteria, and this is an additional property of the product.

Q. Does chlorine also act as a bactericide?—A. Yes. A bactericide is commonly called a product that kills bacteria.

Q. And, does it also act as a deodorant?—A. Yes, sir. If it is able to remove the germs that are causing the objectionable odor, it then deodorizes. [R. 10.]

With respect to the manner in which the imported material is used, Mr. Hansuld further stated that the best method is either to apply it to the surface to be cleaned, and then use a little bit of water to form a paste; or by solution, actually dissolving it in solution, and using it in solution. The product contains $3\frac{1}{4}$ per centum chlorine and $96\frac{3}{4}$ per centum trisodium phosphate (R. 11). The witness stated that trisodium phosphate is commonly used as a detergent or cleaning agent. The witness further stated that chlorine is what is known as an oxidizing agent and that it will reduce any protein matter to a soluble substance, so that if the contamination is of a protein nature, such as meat, egg albumen, or milk, the chlorine in the product serves to reduce that protein to a soluble substance which can be more readily removed from the surface (R. 13).

Government counsel introduced defendant's exhibits A–1 and A–2, which plaintiff's witness stated were used as stickers on some containers when the product "Diversol" was packaged and sold. Defendant's exhibit A–1 describes the product as "bactericide-disinfectant cleanser-deodorant," while defendant's exhibit A–2 refers to the product as "BACTERICIDE DISINFECTANT and Bulk Milk Tank Cleaner."

On redirect examination, Mr. Hansuld testified that cleansers frequently were used and acted as bactericides, disinfectants, or deodorants, "Because a cleanser removes dirt, and in the process of removing dirt, also removes the bacteria in the dirt, and therefore acts as a bactericide, or a disinfectant." He stated that the terms "disinfectant," "bactericide," and "sanitizer" were synonymous and frequently used interchangeably, and, further, that cleaners act as deodorants by "removing the dirt which contains the objectionable odors" (R. 15–16).

Courtney J. Cameron, general manager of Interstate Creamery, Inc., of Buffalo, N.Y., an employee of that company for 20 years, stated that Interstate Creamery was a user of the product "Diversol," represented by plaintiff's illustrative exhibit 1. He testified that its chief use by his company "is to clean our milk cans, thousand-gallon tanks that hold our milk supply, and we make a solution of Diversol, and use it to clean the tank. We also use it in solution to clean floors, to clean miscellaneous small articles such as stirring rods, and pails, and utensils that we use in the manufacturing operation. We use it to clean the milk cans themselves" (R. 17–18).

The defendant concedes, in this case, that, if the imported merchandise herein was not properly classified under paragraph 5 of the Tariff Act of 1930, then it is dutiable under paragraph 13, as claimed by the plaintiff. Paragraph 5 of the Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108, reads as follows:

All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, whether or not in any form or container specified in paragraph 23, Tariff Act of 1930 * * *.

The issue for determination is, therefore, whether the product is a cleaning powder, as contended by the plaintiff, or a chemical compound or mixture, not specially provided for, as classified.

That the imported merchandise is used as a cleaning agent is, in our opinion, definitely established by the testimony. It further appears that the plaintiff has also advertised the product as a bactericide, disinfectant, and deodorant, and it is also conceded that the merchandise in question serves the purpose of a bactericide, deodorant, and disinfectant (R. 10, 15, 16). Taking the testimony

as a whole, the record shows that the powder in question is used primarily as a cleaning agent, and, in the process of cleaning, it does serve the purpose to some extent of disinfecting, deodorizing, and destroying bacteria.

Webster's New International Dictionary, second edition, defines bactericide as "Anything that destroys bacteria" and disinfectant as "An agent that frees from infection; usually, a chemical agent which destroys disease germs or other harmful microorganisms (but not, ordinarily, bacterial spores);—commonly used of substances applied to inanimate objects." The same authority defines a deodorant as "Anything that destroys or masks offensive odors. It may or may not be an antiseptic or disinfectant."

From these definitions, it would appear that a strong cleanser, composed of caustic soda, phosphoric acid, and chlorine, might very well serve as a cleanser for the purpose of removing dirt and other obnoxious matter which are the source of unpleasant odors and which might well contain organisms that are destroyed in the cleaning process. Certainly, the testimony warrants the conclusion that the primary use of the merchandise in question is as a cleaning agent for bulk equipment, the cleansing of which requires strong, penetrating cleaning agents.

As between paragraph 5, *supra*, which is general in character and provides for all chemical elements, all chemical salts and compounds, etc., and paragraph 13 of the tariff act, which provides specifically for "Blackings, powders, liquids, and creams for cleaning or polishing, not specially provided for," the latter provisions are more specifically applicable to the imported product.

The only case cited in the briefs of the parties is that of *Abercrombie & Fitch Co.* v. *United States*, 71 Treas. Dec. 161, T.D. 48779. That case, however, involved a certain cream used principally for keeping leather dry and also having a slight polishing effect. The court held the merchandise more specifically covered by paragraph 13 of the Tariff Act of 1930 as a polishing cream than by the more general provisions of paragraph 1558 of the act for nonenumerated manufactured articles. While the cited case appears to lend some support to the plaintiff's contention, this court would not be warranted in basing its decision on the authority of that case alone.

However, on the basis of the record here presented which, in our opinion, establishes that the involved product has substantial uses as a cleaning agent, we hold the merchandise properly dutiable under paragraph 13 of the Tariff Act of 1930, as modified by the Sixth Protocol to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 6 per centum ad valorem, under the provision therein for "Blackings, powders, liquids, and creams for cleaning or polishing, not specially provided for, and not containing alcohol," as claimed. The protest is sustained. Judgment will be rendered accordingly.